1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SUA SAY CHA,                          No. 2:12-CV-2197-CMK-P

12              Petitioner,

13       vs.                               MEMORANDUM OPINION AND ORDER

14   R. GROUND,

15              Respondent.

16   _____/

17              Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to the written consent of all parties, this

19   case is before the undersigned as the presiding judge for all purposes, including entry of final

20   judgment.  See 28 U.S.C. § 636(c).  Pending before the court are petitioner's petition for a writ of

21   habeas corpus (Doc. 1), respondent's answer (Doc. 13), and petitioner's reply (Doc. 18).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

1

# I. BACKGROUND

**A.**     <u>**Facts**</u>[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

**Prosecution Case-in-Chief**

*Counts One and Two*

In May 2008 Sacramento Police Officers Mee Vang and Mark Callaghan responded to a child molestation report regarding Si.X., the victim in counts one and two. Because defendant makes no claim of error with respect to those counts, their facts need not be set forth in this opinion.

*Counts Three and Four*

While investigating counts one and two, Officer Callaghan spoke with Y.L., a stepdaughter of defendant, who reported that he had approached her on five or six occasions and had asked her to have sex with him. Y.L., aged 15 and in the ninth grade at the time of trial, said that the first incident happened in the fall of her sixth grade year. On each occasion defendant approached her, tapped her on the shoulder, and asked her to go to the bedroom and have sex with him.

In August 2008 Detective Eugene Shim interviewed Y.L. She reported that defendant had propositioned her to have sex with him on four or five occasions. The first incident occurred when she was 12 years old and in the sixth grade. On each occasion, he tapped her on the shoulder and asked her to have sex with him. Because of defendant's behavior, she moved out of the family home for a period of time.

At trial, Y.L. partially recanted her earlier statements to law enforcement. She claimed defendant asked her for sex on only one occasion, in June when she was "probably 11" years old and in the sixth grade going into the seventh grade.

/ / /

/ / /

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. <u>See id.</u> These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1

***Counts Five and Six***

2

During the initial investigation in May 2008, Officer Vang telephoned So.X., another of defendant's stepdaughters, in Fresno and obtained a statement. So.X., aged 22 at the time of trial, reported that defendant tried to have sex with her on five occasions. The first time, he grabbed her as she walked out of the bathroom. He carried her into a bedroom, where he held her down on the bed and tried to touch her private parts. She kicked him and ran away.

3

4

5

6

Approximately two days later, defendant grabbed So.X. as she entered the house. He carried her into her bedroom and held her down on the bed as he tried to touch her private parts. She began yelling and one of her brothers came into her bedroom.

7

8

So.X. reported three additional occasions where defendant accosted her in substantially the same manner. Because of these incidents, she moved out of the house and went to live with a brother.

9

10

In a subsequent telephone interview with Detective Shim, So.X. described three incidents where defendant approached her and attempted to sexually assault her. On the first occasion he grabber her, took her to a bedroom, placed her on the bed, and tried to touch her crotch with his hand. She kicked him and escaped. Approximately two days later, he grabbed her again and took her into a bedroom. He placed his hand on her stomach, but she was able to resist and escape. About two weeks later, he approached her in a hallway, grabbed her, and tried to take her to a different area. During each of these incidents, he asked her to have sex.

11

12

13

14

15

Y.L. participated in a pretext telephone call to defendant. When confronted about counts five and six, he told Y.L. that she would have to speak with So.X.

16

17

At trial, So.X. recanted both of her earlier statements to law enforcement.

18

19

**Defense**

20

The children's mother, who is married to defendant according to Hmong custom but not according to California law, testified that the children do not like defendant because he is not their biological father. She testified that neither Y.L. nor So.X. ever told her about defendant touching them inappropriately. The mother denied that she pressured the children to recant their statements to law enforcement.

21

22

23

Defendant testified on his own behalf. He denied propositioning Y.L. for sex. He also denied that he engaged in any inappropriate activity with So.X. and claimed that he never toucher her or tried to assault her.

24

25

26

///

3

**B.** **Procedural History**

Petitioner was convicted on all counts and sentenced to an aggregate prison term of eights years and eight months.  On direct appeal, the California Court of Appeal struck petitioner's conviction on counts five and six, but otherwise affirmed the conviction, and directed the trial court to enter a corrected judgement.  The California Supreme Court denied direct review.  Petitioner's petitions for post-conviction relief were also all denied.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

/ / /

/ / /

4

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

/ / /

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>See id.</u> at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. <u>See id.</u> In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. <u>See id.</u> at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. <u>See</u> <u>Benn v. Lambert</u>, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. <u>See id.</u> If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. <u>See id.</u>

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in <u>Williams</u>, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. <u>See</u> <u>Williams</u>, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. <u>See id.</u> at 410; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

1  even where the federal habeas court concludes that the state court decision is clearly erroneous.

2  <u>See</u> <u>Lockyer</u>, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

3  deference to state courts by conflating error (even clear error) with unreasonableness." <u>Id.</u> at 75.

4  As with state court decisions which are "contrary to" established federal law, where a state court

5  decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

6  unavailable if the error was non-structural and harmless.  <u>See</u> <u>Benn</u>, 283 F.3d at 1052 n.6.

7        The "unreasonable application of" standard also applies where the state court

8  denies a claim without providing any reasoning whatsoever.  <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d

9  848, 853 (9th Cir. 2003); <u>Delgado v. Lewis</u>, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

10  are considered adjudications on the merits and are, therefore, entitled to deference under the

11  AEDPA.  <u>See</u> <u>Green v. Lambert</u>, 288 F.3d 1081 1089 (9th Cir. 2002); <u>Delgado</u>, 233 F.3d at 982.

12  The federal habeas court assumes that state court applied the correct law and analyzes whether

13  the state court's summary denial was based on an objectively unreasonable application of that

14  law.  <u>See</u> <u>Himes</u>, 336 F.3d at 853; <u>Delgado</u>, 233 F.3d at 982.

15

16                            **III.  DISCUSSION**

17        Petitioner raises the following claims: (1) law enforcement coerced Y.L. into

18  making an "involuntary confession" during her initial interview, in violation of petitioner's due

19  process rights (Claim 1); (2) ineffective assistance of trial and appellate counsel (Claims 2, 3, and

20  5)[2]; and (3) the trial court erred by failing to give a "unanimity instruction as to counts three and

21  four (Claim 4).

22  */ / /*

23

24          [2]     Respondent's answer identifies four claims for relief, but does not reference what

25  petitioner calls "Claim 5" at page 55 of the petition.  In "Claim 5," petitioner argues: "All of my counsel trial ans appellant, Failed to bring In at my trial or appeal. of the private Invest5igators

26  18 page report of all the alleged complaining witnesses.  Doing a full recant and admitting that all of this was abig lie." [sic].

1    **A.    Claim 1 – "Involuntary Confession"**

2    According to petitioner, the complaining witness recanted at trial and only "told

3    Det. Shim of Sac. P.D. what she thought he wanted to hear."  Respondent argues that this claim

4    is unexhausted and without merit.

5    The court agrees with respondent that Claim 1 is unexhausted.[3]  Under 28 U.S.C.

6    § 2254(b), the exhaustion of available state remedies is required before claims can be granted by

7    the federal court in a habeas corpus case.  See Rose v. Lundy, 455 U.S. 509 (1982); see also

8    Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir.

9    2003).  Claims may be denied on the merits notwithstanding lack of exhaustion.  See 28 U.S.C.

10   § 2254(b)(2).  "A petitioner may satisfy the exhaustion requirement in two ways:  (1) by

11   providing the highest state court with an opportunity to rule on the merits of the claim . . .; or

12   (2) by showing that at the time the petitioner filed the habeas petition in federal court no state

13   remedies are available to the petitioner and the petitioner has not deliberately by-passed the state

14   remedies."  Batchelor v. Cupp , 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).  The

15   exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts

16   the initial opportunity to correct alleged constitutional deprivations.  See Picard v. Connor, 404

17   U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.

18   In this case, the record shows that petitioner never raised this claim in the

19   California Supreme Court, either on direct review or in post-conviction proceedings.  As such,

20   Claim 1 will be dismissed.

21   / / /

22   / / /

23   / / /

24   / / /

25

26   [3]    Petitioner does not address exhaustion in his traverse.

      **B.**     **Claims 2, 3, and 5 – Ineffective Assistance of Counsel**

In Claim 2, petitioner contends that trial counsel was ineffective for failing to raise a statute of limitations defense as to counts three and four.  In Claim 3, petitioner contends that both trial and appellate counsel were ineffective because they "failed to argue counts 1-2." In Claim 5, petitioner argues that trial and appellate counsel were ineffective for failing to "bring in at my trial or appeal" a report from a private investigator showing that the complaining witnesses lied.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an

1  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

2  followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at

3  697).

4           The Strickland standards also apply to appellate counsel. See Smith v. Robbins,

5  528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882

6  F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional

7  right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel,

8  as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463

9  U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed." Id.

10 Otherwise, the ability of counsel to present the client's case in accord with counsel's professional

11 evaluation would be "seriously undermined." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274

12 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary,

13 and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation

14 to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus,

15 counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to

16 demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors,

17 he probably would have prevailed on appeal.  See id. at n.9.

18           As to the statute of limitations, the California Court of Appeal addressed the issue

19 as follows:

20           Defendant contends his trial counsel rendered ineffective assistance
            by failing to assert a statute of limitations defense with respect to counts
21           three and four.  We are not persuaded.

22                                    * * *

23           Y.L. was born in May 1994.  The complaint alleges that counts
            three and four occurred between June 1, 2006, and July 1, 2007.  However,
24           Y.L. testified at trial that counts three and four occurred in June when she
            was "probably 11" years old.  If she was aged 11 at the time of the incidents
25           and the incidents occurred in June, they occurred no later than June 2005,
            and the three-year limitation for these misdemeanor offenses. . . would have
26           barred the complaint that was filed in August 2008. . . .

1

2

       Trial counsel was not asked to explain why he failed to raise this statute of limitations issue.  Moreover, a satisfactory explanation for the omission appears on the record. . . .

3

4

5

6

7

8

9

       The statute of limitations issue could not have been litigated in limine because the complaint alleged that the offenses occurred between June 2006 and July 2007, which would have made their prosecution timely.  The statute of limitations defense arose solely from Y.L.'s testimony at trial.  However, defendant's primary defense was that he did not commit the charged crimes and the victims fabricated their claims because they did not like him.  In light of this defense, trial counsel reasonably could have made a tactical decision to forego an inconsistent alternative defense that defendant committed the acts underlying counts three and four but did so outside the statute of limitations.  An admission that he had committed the misdemeanor conduct would not have assisted in his defense to the four felony counts. . . .

10       Because the state court applied the correct controlling federal standards, this court

11  reviews to determine whether the state court decision was the result of an unreasonable

12  application of the facts to those standards.  In so doing, the court notes that an "unreasonable

13  application" occurs only when the state court "erred so transparently that no fairminded jurist

14  could agree with that court's decision."  Bobby v. Dixon, 132 S.Ct. 26, 27 (2011).

15       The state court's reasoning stems from the assumption that, had counsel pursued

16  the statute of limitations defense, the jury would have been presented with conflicting theories –

17  on the one hand that petitioner never did the charged acts and, on the other hand, that he did the

18  charged acts, but too long ago.  This logic fails to account for the possibility that counsel could

19  have asserted the statute of limitations defense outside the presence of the jury, or that the jury

20  could have been told that asserting the statute of limitations defense does not constitute an

21  admission of culpability.  However, while this court is not particularly persuaded by the state

22  court's reasoning, this is not to say that no fairminded jurist could be.

23       Petitioner's remaining ineffective assistance of counsel claims were addressed by

24  the trial court on habeas review.  In denying these claims, the state court observed that petitioner

25  failed to provide evidence or otherwise support his claims.  The same is true in the current

26  petition.  As to Claim 3, petitioner fails to explain how counsel "failed to argue" counts one or

two.  Similarly, as to Claim 5, petitioner fails to explain how counsel were ineffective with respect to a private investigator's report.  In this regard, the court notes that petitioner was afforded an opportunity at trial to present his contention that the complaining witnesses initially lied and later recanted – a contention the jury rejected.

### C.   Claim 4 – Unanimity Instruction

The California Court of Appeal addressed this issue on direct appeal as follows:

> Defendant contends the trial court erred by failing to give the jury a unanimity instruction on counts three and four.  We disagree.

The state court then explained that, under California law, the jury must agree unanimously that the defendant is guilty of a specific crime.  See People v. Diedrich, 31 Cal. 3d 263 (1982).  In cases where the evidence suggests more than one discrete crime, either the prosecutor must elect among the crimes, or the court must require the jury to agree on the same criminal act.  The state court continued as follows:

> In this case, although the evidence supported a finding that defendant asked Y.L. to have sex with him on as many as five or six occasions, the prosecutor elected to charge defendant with two discrete acts, which he described as the first time defendant propositioned Y.L. for sex (count three) and the last time he propositioned her for sex (count four).

> Thus, the prosecutor argued: "We know it happened more than once.  Therefore, we know it happened a first time and we know it happened a last time.  Could it have happened four times?  Yeah.  Could it have happened five times?  Yeah.  We didn't charge it because it's just a little too precise for you, folks, and with this evidence, it's just a little simpler to say, the first and the last.  That way there's no question."  Shortly thereafter, the prosecutor continued: "[a]nd so, the first time he asked her to have sex, is Count Three,  and the last time he did it is Count Four. [¶] . . . There was a last one.  If it happened more than one time, there's a last one."

> The Attorney General contends the prosecutor's comments constitute the required election.  We agree.  Because Y.L.'s description of the five or six acts was generic and offered the jury no basis upon which to disagree as to the number of acts committed, the prosecutor's election for the "first" and the "last" act was sufficient to ensure a unanimous verdict.  We caution that this would not be the case if the jurors had a basis to disagree as to the total number of acts committed.

Defendant claims the prosecutor's statements were inadequate because they "did not directly inform the jurors of an election." We disagree. . . . [T]he prosecutor's remarks made it abundantly clear that he was seeking conviction for only two acts, the first one and the last one.

* * *

In any event, the omission of a unanimity instruction was harmless beyond a reasonable doubt. . . .

As we have noted, defendant's primary defense was that he did not commit the charged crimes and the victims fabricated their claims because they did not like him. They jury clearly resolved the credibility issue against defendant because it convicted him of five charged crimes and a lesser included offense of the sixth charged crime. Based on these verdicts, it is clear beyond a reasonable doubt that the jury rejected defendant's testimony and unanimously convicted him of the charges in counts three and four. The omission of a unanimity instruction played no part in that basic determination.

As respondent notes, there is no constitutional right to a unanimous jury in a state criminal trial. See Schad v. Arizona, 501 U.S. 624, 634 n.5 (1991); Apodaca v. Oregon, 406 U.S. 404, 406 (1972); Johnson v. Louisiana, 406 U.S. 356, 359 (1972). Thus, any error with respect to a unanimity instruction could only constitute a violation of state law. A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

## IV.  CONCLUSION

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability. Before petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253©; Fed. R. App. P. 22(b). Where the petition is denied on the merits, a certificate of appealability may issue under

1   28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

2   constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of

3   appealability indicating which issues satisfy the required showing or must state the reasons why

4   such a certificate should not issue. See Fed. R. App. P. 22(b). Where the petition is dismissed

5   on procedural grounds, a certificate of appealability "should issue if the prisoner can show:

6   (1) 'that jurists of reason would find it debatable whether the district court was correct in its

7   procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition

8   states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775,

9   780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).

10  For the reasons set forth above, the court finds that issuance of a certificate of appealability is

11  appropriate on petitioner's claim that counsel was ineffective for failing to assert a statute of

12  limitations defense as to counts three and four.

13          Based on the foregoing, IT IS HEREBY ORDERED that:

14          1.      Claim 1 is dismissed as unexhausted;

15          2.      Petitioner's remaining claims are denied;

16          3.      The court grants a certificate of appealability on petitioner's claim that

17  counsel was ineffective for failing to assert a statute of limitations defense as to counts three and

18  four; and

19          4.      The Clerk of the Court is directed to enter judgment and close this file.

20

21  DATED:  January 20, 2016

22

23                                          _____
                                            CRAIG M. KELLISON
                                            UNITED STATES MAGISTRATE JUDGE
24

25

26